```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                         EASTERN DIVISION


OSCAR BEESLEY, JR.,              )
                                 )
          Plaintiff,             )
                                 )
     v.                          )    No. 4:08 CV 1298 DDN
                                 )
MICHAEL J. ASTRUE, Commissioner  )
of Social Security,              )
                                 )
          Defendant.             )
```

**MEMORANDUM**

This action is before the court for judicial review of the final decision of defendant Commissioner of Social Security denying the application of plaintiff Oscar Beesley, Jr., for disability insurance benefits under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401, et seq. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 8.) For the reasons set forth below, the undersigned reverses and remands the decision of the ALJ.

**I. BACKGROUND**

Oscar Beesley, Jr., who was born on July 22, 1953, and was fifty four years old at the time of his hearing, filed a June 18, 2007 application for disability insurance benefits under Title II. (Tr. 11-12.) He alleged an onset date of disability of June 15, 2007 due to back and leg problems and difficulty urinating. (Tr. 123.) The claim was denied on initial review. (Tr. 48-52.) Beesley requested a hearing, appealing directly to the ALJ.[1] (Tr. 53.) On February 22, 2008, following a hearing, the ALJ found Beesley not disabled. (Tr. 14-28.) On June 26, 2008, the Appeals Council denied his request for

---

[1] Missouri is one of several test states participating in modifications to the disability determination procedures which apply in this case. 20 C.F.R. §§ 404.906, 404.966 (2007). These modifications include, among other things, the elimination of the reconsideration step. See id.

review. (Tr. 5-9.) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II. MEDICAL HISTORY

In 1974 Beesley suffered a work injury causing bilateral pelvic fractures, a back fracture, and a right femur fracture requiring surgery. The injury caused the muscles around his bladder to weaken, requiring him to use a catheter. (Tr. 31-32, 36).

Brian Edwards, D.O., has been Beesley's primary care physician since 2004. On March 3, 2006, Beesley saw Dr. Edwards complaining of frequent urination. (Tr. 210.) Dr. Edwards diagnosed a urinary tract infection and prescribed antibiotics. (Tr. 210.) On August 14, 2006, Beesley saw Dr. Edwards again complaining of urinary frequency and retention and pain in the bladder area. (Tr. 208.) Dr. Edwards's impression was urinary frequency and enlarged prostate. (Tr. 208.)

August 28, 2006 tests revealed "[n]o abnormality of either kidney or the renal collecting systems other than mild malrotation of the right kidney as developmental variation." (Tr. 212.) The examiner noted there was no abnormality of the filled bladder yet there was no decompression of the bladder on the postvoid image, indicating possible bladder dysfunction. (Tr. 212.)

On September 26, 2006, Beesley saw John P. Koonce, M.D., a urologist, complaining of difficulty emptying his bladder and that he was voiding 12 to 15 times per day. (Tr. 197-200.) Dr. Koonce found no abnormalities upon physical examination (Tr. 199-200) and opined that Beesley had a neurogenic[2] bladder, as well as supra-pubic pain of a musculoskeletal or gastrointestinal origin, both of which he believed were unrelated. (Tr. 211.) He did not recommend intermittent self-catheterization, which had been recommended in the past. (Tr. 211.)

On October 16, 2006, Beesley saw Dr. Koonce again, as well as on November 20, 2006, at which time he asked Dr. Koonce if there was medication he could take instead of using the catheter. (Tr. 187.)

---

[2]Originating in or starting from or caused by the nervous system or nervous impulses. Stedman's Medical Dictionary 1310 (28th ed. 2006).

Beesley saw Dr. Koonce again on December 26, 2006 and informed Koonce that he was using the catheter 15-20 times per day. (Tr. 189). On a visit to Dr. Koonce (in which the date on the medical records is unclear) Beesley reported self-catheterizing 10 to 15 times per day. Dr. Koonce prescribed Vesicare, a prescription medication for overactive bladder. (Tr. 188.) On December 15, 2006, Beesley saw Dr. Edwards for lower right back pain. (Tr. 206). Dr. Edwards's impression was lumbar pain. He recommended electrical muscle stimulation, a heat pack, and rest. (Tr. 206.)

On a May 30, 2007, visit to Dr. Edwards, Beesley requested disability paperwork and reported pain in his back, hips, and legs. (Tr. 205.) Dr. Edwards noted that Beesley was ambulatory without assistance. (Tr. 205.)

On August 15, 2007, Barry Burchett, M.D., performed a consultative orthopedic examination. (Tr. 215-20.) Beesley reported that he sustained pelvic, back, and leg fractures in a 1974 on-the-job injury. (Tr. 215.) Beesley also reported that his back pain was exacerbated by sitting for more than one or two hours or by riding a lawn mower. (Tr. 216.) Dr. Burchett's impression was (1) degenerative disc disease of the lumbar spine with radiculopathy[3] of the right lower extremity; (2) status post remote fracture of the right hand with persistent tenderness; (3) neurogenic bladder with frequent self catheterizations; and (4) status post cervical fusion. (Tr. 217-18.) Dr. Burchett concluded that Beesley "would have limitation regarding significant ambulation and probably should use the cane for significant walking. He should take breaks from sitting every hour or so. He would not be able to operate a forklift as he was doing previously." (Tr. 217-18.)

On August 24, 2007, Beesley saw Dr. Edwards complaining of urinary urgency and that he was now carrying a catheter at all times. (Tr. 244.) X-rays taken September 4, 2007 for low back pain showed "mild" degenerative changes of the lumbar spine. (Tr. 222.)

---

[3]Radiculopathy is a disorder of the spinal nerve roots. Stedman's Medical Dictionary 1622 (28th ed. 2006).

On September 6, 2007, Beesley saw Dr. Edwards for a laceration to his left index finger sustained while using a log splitter. The injury involved the complete removal of the distal tip of his left finger. (Tr. 238-239.) Dr. Edwards advised Beesley of the severity of the injury, the risk of serious infection, and that the laceration required an emergency room setting or a hand surgeon because a skin graft was probably necessary. Beesley refused to seek other treatment "because of insurance reasons." Dr. Edwards contacted a hand surgeon who advised him on how to treat Beesley at his office. Dr. Edwards dressed the finger, prescribed pain medication, and instructed Beesley on how to change the dressing daily. (Tr. 239.) Beesley saw Dr. Edwards the next day for follow-up on the laceration, as well as on September 10, 17, and 24, and October 9 and 27, 2007. (Tr. 235-36, 240-43.) At the September 10 visit, Beesley reported pain in his back and hips, but denied any finger pain. (Tr. 242.)

In a letter dated December 26, 2007, Dr. Koonce indicated that Beesley was diagnosed with neurogenic bladder and self-catheterized 10 to 15 times per day. (Tr. 255.)

On December 28, 2007 Dr. Edwards completed a Multiple Impairment Questionnaire. (Tr. 246-253.) Dr. Edwards listed Beesley's diagnoses as chronic back pain and urinary retention, and his prognosis as "poor." He noted Beesley was unable to urinate unless he straight catheterizes himself, and that he had back pain limiting his range of motion, and his ability to lift, stand for prolonged periods, bend, or twist. Dr. Edwards opined that Beesley was in constant, severe pain, and had moderately severe fatigue. (Tr. 248.) He estimated that Beesley could sit for four total hours and stand or walk for three total hours in an eight-hour workday. (Tr. 248.) He indicated that Beesley could not sit or stand continuously and that he would need to get up and move around once every hour and could sit again after 15 minutes. (Tr. 248.) He also opined that Beesley could lift and carry up to 10 pounds frequently and up to 20 pounds occasionally. (Tr. 249.) Dr. Edwards also indicated that Beesley was moderately limited at grasping and handling objects and markedly limited at reaching. (Tr. 249-250.) He opined that Beesley would require multiple unscheduled 15 minute breaks during

the workday and would be absent from work more than three times per month. (Tr. 251-252.) Dr. Edwards opined that Beesley could not do full-time competitive work that required activity on a sustained basis, and that his pain and fatigue was constant and severe enough to interfere with attention and concentration. (Tr. 251.) Dr. Edwards opined Beesley could tolerate low work stress and stated that he "had pushed himself for many years." (Tr. 251.) Edwards also indicated that Beesley should avoid extreme temperatures and could not push, pull, kneel, bend, or stoop. (Tr. 252.)

In undated correspondence Dr. Edwards stated that he sees Beesley every few months for chronic back pain; that he has decreased range of motion, muscle tenderness, and tightness in his back; and that he currently takes prescription medications for pain and urinary retention. (Tr. 256.) He opined that Beesley had significant limitations in his activity due to his pain. He believed Beesley's conditions were chronic, that he would not get better, and that his prognosis was "poor." He opined that Beesley could not stand for prolonged periods and would need frequent breaks from sitting. (Tr. 256.)

**The Hearing**

On January 3, 2008, a hearing was conducted. (Tr. 29-45.) At the time of the hearing Beesley was approximately 5 feet 9 inches tall and weighed 160 pounds.

Beesley testified that he completed the tenth grade and never received a GED. His relevant work experience was driving a forklift for many years. (Tr. 32.) He testified that he stopped working on June 15, 2007 because he could barely walk due to back and leg pain; he needed to use a catheter at all times to go to the bathroom; and he was informed that he earned too much to receive disability benefits. (Tr. 32-34.)

Beesley testified that he has used a catheter for the past two years, and that he currently used it 10 to 15 times per day. (Tr. 32, 35.) He testified that he uses a cane because his right leg sometimes "gives out." (Tr. 33.)

Beesley testified that in the last eight months his back pain varied, some days being worse than others. He stated that as a forklift driver, when getting off the forklift he could hardly straighten up, and if he sits very long he has to get up and straighten his back. (Tr. 36.) Beesley testified that he could walk only two blocks before needing to rest; that he could stand approximately 5 to 10 minutes; and that he could not lift more than 10 to 20 pounds. (Tr. 37.) He testified that he could sit approximately 15 minutes before needing to get up, and that he is up and down all night long at home. He testified that elevating his feet helps relieve his back pain somewhat. (Tr. 37.) He testified he could walk about two blocks without resting and that he required a motorized cart to shop at Walmart. (Tr. 37.) He testified he could stand for 5 to 10 minutes, and could carry 10 to 20 pounds. (Tr. 37-38.) He testified he was unable to mow the lawn or shovel snow, and that he did not take vacations. (Tr. 38.) He testified that he that he owned a dog, and enjoyed television and building model cars. (Tr. 38.)

The ALJ asked the vocational expert (VE) to assume a hypothetical claimant who could lift and carry 20 pounds occasionally and 10 pounds frequently, required the option to sit or stand, and could never climb ropes, ladders, or scaffolds or be exposed to unprotected heights. (Tr. 40.) The VE testified that such a claimant could not perform Beesley's past relevant work (PRW), but could work as a packer mailer and assembler. He testified that 5,000 positions in either job existed in the state, with forty times as many positions in the nation. (Tr. 40.)

The ALJ next asked the VE to assume a hypothetical claimant who could sit for four hours a day, stand or walk for three hours a day, lift and carry 20 pounds occasionally and 10 pounds frequently, with the major qualification that the claimant would need to take multiple breaks during an 8-hour workday. The VE testified that such a claimant could not return to his PRW, nor would he be able to perform full-time work in the national economy. (Tr. 41-42, Ex. 8F.)

Beesley's counsel then asked the VE to assume a hypothetical claimant who would have significant limitation regarding significant

-6-

ambulation, who probably should use a cane for significant walking, and who should take breaks from sitting every hour or so. The VE testified that such a claimant could not perform his PRW or work as a packer mailer or similar light work. (Tr. 42-43.) Counsel then asked the VE whether a hypothetical claimant would be accommodated who would need to take 6 to 8 unscheduled breaks of 5 to 10 minutes in an 8-hour work day. The VE testified that would not be accommodated because it would represent a significant impediment. He testified that anything beyond two 15- minute breaks, plus a lunch break, would represent a significant accommodation. (Tr. 42-44.)

On January 3, 2008, the ALJ wrote Dr. Edwards a letter seeking clarification of his December 28, 2007 Multiple Impairment Questionnaire. (Tr. 168-169.)

Beesley also submitted a March 17, 2008 treatment record from Dr. Edwards to the Appeals Council. Beesley complained of back pain radiating into to his right leg. Dr. Edwards diagnosed sciatica and urinary retention, and prescribed pain medication (Tr. 259).

### III. DECISION OF THE ALJ

On February 22, 2008, the ALJ issued an unfavorable decision. (Tr. 17-25.) The ALJ found that Beesley had not engaged in substantial gainful activity since June 15, 2007, his alleged onset date. (Tr. 19.) The ALJ found that the medical evidence showed Beesley had the following impairments: urinary frequency, residuals of cervical fusion, and mild degenerative changes of the lumbar spine. (Tr. 19.) The ALJ found that the medical evidence established that Beesley did not have an impairment or combination of impairments either listed in or medically equal to one listed in 20 CFR Part 404, Subpart P, Appendix 1.

The ALJ found that Beesley was unable to perform any past relevant work (PRW), and that after careful consideration of the entire record, Beesley had the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b), with the need for a sit/stand option with limitations to no climbing of ropes, ladders and scaffolds, and to avoid concentrated exposure to the hazards of heights. (Tr. 21, 23.) The ALJ did not find Beesley's allegations credible, and concluded that

based on the testimony of the VE, Beesley was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, and therefore he was "not disabled." (Tr. 24.)

## IV. GENERAL LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and is supported by substantial evidence in the record as a whole. Pate-Fires v. Astrue, No. 07-3561, 2009 WL 1212805, at *6 (8th Cir. May 6, 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. Id. As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove he is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A), 1382c(a)(3)(A); Pate-Fires, 2009 WL 1212805, at *6. A five-step regulatory framework is used to determine whether an individual qualifies for disability. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing the five-step process); Pate-Fires, 2009 WL 1212805, at *6 (same).

Steps one through three require the claimant to prove (1) he is not currently engaged in substantial gainful activity, (2) he suffers from a severe impairment, and (3) his disability meets or equals a listed impairment. Pate-Fires, 2009 WL 1212805, at *6. If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to steps four and five. Id. Step four

requires the Commissioner to consider whether the claimant retains the RFC to perform PRW. Id. The claimant bears the burden of demonstrating he is no longer able to return to his PRW. Id. If the Commissioner determines the claimant cannot return to PRW, the burden shifts to the Commissioner at step five to show the claimant retains the RFC to perform other work. Id.

## V. DISCUSSION

Beesley argues the ALJ erred by: (1) denying his claim because of opportunities for work that are merely conceivable and not reasonably possible, given that there is no evidence in the record that he has the RFC to perform light work; (2) failing to evaluate the combined effect of all his impairments; (3) failing to accord "great" weight to his treating physician; and (4) failing to make a finding that is supported by substantial evidence.

### A. Credibility and Residual Functional Capacity

Beesley argues the ALJ erred in denying his claim "because of opportunities for work that are merely conceivable and not reasonably possible given [his] limitations and health problems." He argues the ALJ erred by indicating he has the RFC to perform light work, noting specifically that the ALJ did not take into consideration that he has chronic back pain from his 1974 injury, severe urinary retention requiring him to straight catheterize himself, decreased range of motion, and tenderness and tightness of the back musculature.

The Commissioner argues this argument goes to credibility. Specifically, the Commissioner argues that the ALJ's finding that Beesley's complaints were not entirely credible is supported by substantial evidence and that the ALJ's consideration of the subjective aspects of Beesley's complaints was consistent with the regulations and policy.

RFC is a medical question and the ALJ's assessment of RFC must be supported by substantial evidence in the record. Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001); Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001); Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000). RFC

-9-

is what a claimant can do despite his limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and a claimant's description of his limitations. Donahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001); 20 C.F.R. § 416.945(a). While the ALJ is not restricted to medical evidence alone in evaluating RFC, the ALJ is required to consider at least some evidence from a medical professional. Lauer, 245 F.3d at 704. Defendant has the burden of proof for an assessment of RFC that will be used to prove that a claimant can perform other jobs in the national economy. Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000). The RFC need only include *credible* limitations. Tindell v. Barnhart, 444 F.3d 1002, 1007 (8th Cir. 2006)(emphasis added).

In this case the ALJ articulated the inconsistencies on which he relied in discrediting Beesley's subjective complaints, and because those inconsistencies are supported by the record, the undersigned concludes his credibility finding should be affirmed. See Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996); Steed v. Astrue, 524 F.3d 872, 876 (8th Cir. 2008)(inconsistencies between a claimant's daily activities and his self-reported limitations detract from the claimant's credibility; holding there was substantial evidence for the ALJ's observation that claimant's reported daily activities were inconsistent with her self-reported limitations).

Specifically, the ALJ noted that Beesley could use a log splitter (Tr. 20, 22, 216, 238-39), and that he testified that he quit his job in part to qualify for disability benefits. (Tr. 22, 34.) Cf. Eichelberger v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004)(in determining credibility, the ALJ may consider evidence of the claimant's reduced motivation to work; ALJ found that claimant had impairments, but also noted that her incentive to work might be inhibited by her long-term disability check).

Based on the foregoing, the court concludes the ALJ considered the subjective aspects of Beesley's complaints consistent with the applicable regulations. See 20 C.F.R. § 404.1529 (2008); SSR 96-7p. The undersigned further concludes the ALJ considered Beesley's testimony and supported his decision to discount plaintiff's subjective complaints

of pain.  See Stephens v. Shalala, 46 F.3d 37, 39 (8th Cir. 1995) (where there are inconsistencies in the evidence as a whole, the Secretary may discount subjective complaints).

The court rejects Beesley's argument that the ALJ erred in denying his claim "because of opportunities for work that are merely conceivable and not reasonably possible given [his] limitations and health problems."  In Barker v. Harris, 650 F.2d 138, 139 (8th Cir. 1981), the Eighth Circuit affirmed the Commissioner's decision and quoted the general principle that "the emphasis is on the particular claimant's capabilities and on what is reasonably possible, not on what is conceivable."  Id. at 139.  Beesley does not elaborate on the significance of Barker, and the court concludes it is inapposite here.

## B. Combined effect of all impairments

Beesley next argues the ALJ erred in failing to evaluate the combined effect of all his impairments.  Beesley argues he has multiple impairments, all of which are distinct and affect different parts of his body, but which at the same time interact to increase his overall disability.  Specifically, Beesley argues there is nothing in the record contradicting the medical findings of chronic pain, severe urinary retention, decreased range of motion, muscle tenderness, and tightness of the back musculature.  He argues the ALJ focused only on part of the medical records and ignored others, and as a result, drew the wrong conclusion.

The Commissioner responds that the ALJ complied with the applicable regulation, 20 C.F.R. § 404.1523,[4] and notes that the ALJ specifically

---

[4]The regulation provides:

In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  If we do find a medically severe combination of

(continued...)

-11-

found that Beesley "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments and that he considered "all symptoms" in determining Beesley's RFC.

An express statement that the ALJ considered the combined impairments, generally, would be sufficient to show that he complied with the regulation. <u>Cf.</u> <u>Raney v. Barnhart</u>, 396 F.3d 1007, 1011 (8th Cir. 2005) (after the ALJ listed all of the claimant's physical and mental impairments, he expressly stated he considered the claimant's impairments individually and in combination, and based his RFC assessment on the combination of impairments). However, in the context of the this case, as set forth more fully below, the ALJ erred by not making specific findings regarding plaintiff's asserted urinary frequency condition.

**C.  Dr. Brian Edwards, treating physician**

Beesley argues the ALJ erred by failing to give "great" weight to the opinion of Dr. Edwards, his treating physician. He argues Dr. Edwards's opinion is well supported and not inconsistent with the findings of consultative examiner Dr. Burchett. In response, the Commissioner argues that the ALJ properly weighed the medical evidence. The court agrees.

"A treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight." <u>Singh</u>, 222 F.3d at 452. If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the opinion should be given controlling weight. <u>Id.</u> A treating physician's opinions must be considered along with the evidence as a whole, and when a treating physician's opinions are inconsistent or contrary to the

---

[4](...continued)
impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

20 C.F.R. § 1520.

-12-

medical evidence as a whole, they are entitled to less weight.  See id.;
Sampson v. Apfel, 165 F.3d 616, 618 (8th Cir. 1999).  Thus, if other
medical assessments are supported by superior medical evidence, the ALJ
may discount the opinion of the treating physician.  Hogan v. Apfel, 239
F.3d 958, 961 (8th Cir. 2001).  However, the ALJ may not discredit a
claimant solely because his subjective complaints are not fully
supported by objective medical evidence.  Ramirez v. Barnhart, 292 F.3d
576, 580-82 (8th Cir. 2002).

Regulation § 404.1527(d)(2)requires the agency to give good reasons for not giving weight to a treating physician in the context of a disability determination.  Pursuant to this regulation, an ALJ must give more weight to opinions of treating sources since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairments.  And they may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of the individual examinations, such as consultative examinations or brief hospitalizations.  20 C.F.R. § 404.1527(d)(2).

If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors--namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source--in determining what weight to give the opinion.  Id.

In this case the ALJ found that Beesley's severe impairments included urinary frequency, residual problems from a cervical fusion, and mild degenerative changes of the lumbar spine.  (Tr. 19.)  The ALJ concluded that Beesley retained the RFC to perform light work, except that he required an option to sit or stand, and had to avoid unprotected heights.  (Tr. 21.)  The ALJ made no finding about the effect of plaintiff's urinary retention and its effect upon his RFC.

The ALJ's conclusions reflected Dr. Burchett's consultative findings.  (Tr. 20-21.)  Dr. Burchett observed that Beesley had reduced grip strength and lower-extremity strength on the right side, possibly

due to reduced effort. (Tr. 20-21, 218.) Dr. Burchett also found that Beesley walked with a slow and significant limping gait, did not require an assistive device, but should use a cane for significant walking. (Tr. 216-18.) Dr. Burchett also opined that Beesley should take breaks from sitting every hour or so and that he would not be able to operate a forklift as he did previously. Dr. Burchett diagnosed plaintiff Beesley with a neurogenic bladder that required frequent daily self-catheterizations. (Tr. 217-18.)

As to Beesley's assertion that the ALJ erred by not affording controlling weight to Dr. Edwards's December 2007 opinion, the ALJ stated he gave Dr. Edwards's opinion reduced weight because it lacked objective support and conflicted with other evidence. (Tr. 23.) The ALJ also noted that Dr. Edwards's opinion conflicted with other evidence in the record (Tr. 23.)

The ALJ observed that the physical limitations Dr. Edwards assigned to Beesley appeared inconsistent with Beesley's demonstrated ability to use a log-splitter. (Tr. 23.) Moreover, Dr. Edwards also indicated that the limitations he described existed from the time he began treating Beesley in 2004, even though Beesley did not report back problems until December 2006 and testified that he did not leave his job as a forklift driver until 2007. (Tr. 36, 252.) Moreover, the spinal x-rays taken shortly before Dr. Edwards issued his opinion showed only "mild" degenerative changes. (Tr. 222.) Therefore, the ALJ properly concluded that other evidence of record conflicted with Dr. Edwards's opinion.

The ALJ also contacted Dr. Edwards for clarification regarding these issues, but received no response. (Tr. 23, 168-169.) See also 20 C.F.R. § 404.1512(e)(1) (2008) (ALJ should recontact a medical source for "additional evidence or clarification" when a prior report contains a conflict, is missing information, or appears to reflect an improper basis).

The ALJ did not completely accept Dr. Edwards's opinion because he found it presented conflicts that could not be resolved with the medical evidence of record. (Tr. 23.) The ALJ found, consistent with Dr. Edwards, that Beesley could lift twenty pounds occasionally and would

require the option to sit or stand. (Tr. 21, 248, 249.) Thus, aspects of the ALJ's RFC demonstrate that he accepted Dr. Edwards's opinion "where supported by the objective medical evidence." See Choate v. Barnhart, 457 F.3d 865, 870 (8th Cir. 2006)(limitations to a restricted range of light work were "significant limitations, demonstrating that the ALJ gave some credit to the opinions of the treating physicians where . . . supported by the objective medical evidence").

Regarding plaintiff's asserted urinary frequency, the ALJ determined that this condition not only existed but was severe. However, the ALJ found that the record is empty of any objective evidence of a condition that would preclude plaintiff from sitting for six hours during an eight hour workday. This finding is made in spite of Dr. Koonce's and Dr. Burchett's findings that plaintiff has a neurogenic bladder.

Accordingly, the undersigned concludes the ALJ's reasons for discrediting Dr. Edwards's statement about plaintiff's urinary frequency are not supported by substantial evidence.

**E.  Substantial Evidence**

Beesley argues the ALJ erred in failing to make a finding which is supported by substantial evidence. He argues the record is undeveloped in several aspects. Specifically, Beesley contends that if the ALJ could not find him credible and could not accept Dr. Edwards's opinion with respect to the December 28, 2007 Multiple Impairment Questionnaire he then should have ordered additional tests or a consultative orthopaedic examination. The court agrees that the ALJ erred in failing to make a relevant and important finding of fact, i.e. whether or not, as Dr. Edwards stated, Beesley would require multiple unscheduled 15 minute breaks during the workday. (Tr. 251–52.)

In this case the ALJ concluded that Beesley could not return to his prior employment. Thus, the burden shifted to the Commissioner to show that work existed in the national economy that Beesley could do. Cline v. Sullivan, 698 F.2d 560, 564 (8th Cir. 1991). In this case the ALJ proposed to the VE a hypothetical question, asking whether or not

someone with the suggested impairments and RFC could work in the national economy.

A hypothetical question by the ALJ to the vocational expert must completely describe a claimant's individual impairments. House v. Shalala, 34 F.3d 691, 694 (8th Cir. 1994). The question must include only those impairments which actually exist, supported by substantial evidence, not those rejected by the ALJ. Davis v. Shalala, 31 F.3d 753, 755 (8th Cir. 1994); Hinchey v. Shalala, 29 F.3d 428, 432 (8th Cir. 1994); Bradshaw v. Heckler, 810 F.2d 786, 790 (8th Cir. 1987) ("The question must state with precision the physical and mental impairments of the claimant.").

An improper hypothetical question cannot serve as substantial evidence under § 405(g). Whitmore v. Bowen, 785 F.2d 262, 263-64 (8th Cir. 1986); McMillian v. Schweiker, 697 F.2d 215, 221-22 (8th Cir. 1983).

In Beesley's case, there was substantial evidence that Beesley was required to self-catheterize more than 10 times per day. Yet, the ALJ, after describing evidence of this condition, finding that plaintiff suffered from the severe condition of urinary frequency, and even after concluding that Beesley could not perform his prior gainful employment, never expressly found as a matter of fact whether or not plaintiff was required to self-catheterize, and, if so, how often. And the ALJ never included this fact in his hypothetical question to the VE. However, in response to questioning by Beesley's counsel, the VE testified that Beesley could not work if he had to interrupt his workday frequently for this purpose.

> The court notes that the ALJ recounted in his opinion that
>
> in response to certain questions from claimant's counsel, the vocational expert testified that the claimant could not work. However, those questions assumed facts not in evidence, or that the claimant was credible. This Administrative Law Judge did not find the claimant's allegations credible. No weight can be given to the vocational expert's answers which were based on facts not in evidence, or on an assumption that the claimant was credible.

(Tr. 24.) In saying this, the ALJ does not expressly refer to the urinary frequency he found to exist as a severe condition and which was

-16-

mentioned by two doctors and which was not contradicted by any evidence. In fact, the attorney's questions touched not only on the evidenced urinary frequency (Tr. 43) but also upon plaintiff's asserted need to use a cane to stand, which would prevent him from doing the described light work with two hands. (Id.)

The court also notes that plaintiff's urinary frequency condition is supported by the objective medical data. The August 28, 2006, report of Dr. Charles Stricker stated, "There is no abnormality of the filled bladder **yet there was no decompression of the bladder on the postvoid image indicating relatively large postvoid bladder residual.** (Tr. 212)(bold added.)

Therefore, the final decision of the Commissioner must be reversed and the action remanded for the ALJ to reconsider the record, to make specific findings as to whether or not plaintiff Beesley needs to self-catheterize himself and, if so, how frequently during a workday and whether or not any such frequency would affect plaintiff's RFC and ability to be employed in the national economy.

**F.   New evidence**

Beesley also submitted correspondence from Dr. Edwards dated December 22, 2008. (Ex. A.) To the extent Beesley is seeking remand under sentence 6 for the purpose of submitting additional medical evidence not previously considered with respect to his claim for benefits, this argument fails.

A sentence six remand is authorized in only two limited situations: (1) where the Commissioner requests a remand before answering the complaint of a claimant seeking reversal of an administrative ruling, or (2) where new and material evidence is adduced that was for good cause not presented during the administrative proceedings. See 42 U.S.C. § 405(g); Shalala v. Schaefer, 509 U.S. 292, 297 n.2 (1993); Woolf v. Shalala, 3 F.3d 1210, 1215 (8th Cir. 1993).

New evidence does not include cumulative evidence which would not have changed the ALJ's decision. Riley v. Shalala, 18 F.3d 619, 623 (8th Cir. 1994). Good cause for the failure to present the evidence

previously may be shown by the fact that the subject evidence did not exist previously. <u>Goad v. Shalala</u>, 7 F.3d 1397, 1398 (8th Cir. 1993). Materiality, which is treated as a separate test under § 405(g), relates to the claimant's condition on or before the date of the ALJ's decision. <u>Id.</u> To be material, new evidence must be non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied, and there must be a reasonable likelihood that it would have changed the Commissioner's decision. <u>Id.</u>

Following a review of the evidence, the court concludes that the December 22, 2008 correspondence is essentially cumulative and not substantially different from the record evidence presented to the ALJ at the time of the decision. The court does not believe there is a reasonable likelihood that this evidence would have changed the Commissioner's decision. Nor has counsel demonstrated good cause for the failure to present the evidence previously. On these bases, the court concludes the additional evidence does not provide a basis for remand.

## VI. CONCLUSION

For the reasons set forth above, the court reverses the final decision of the Commissioner of Social Security and remands the action under Sentence 4 of 42 U.S.C. § 405(g). On remand, the ALJ shall reconsider the record and make specific findings of fact as to whether or not plaintiff needs to self-catheterize himself during a workday, and, if so, how often, and what effect this condition has on his residual functional capacity and his ability to be employed in the national economy.

An appropriate judgment order is issued herewith.

/S/ David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on July 6, 2009.